IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>ALPINE SUMMIT ENERGY PARTNERS, INC., *et al.*,[1]<br>Debtors | Chapter 11<br><br>Case No. 23-90739 (MI) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALPINE SUMMIT ENERGY PARTNERS, INC., *et al.*, on behalf of the Debtors' estates,<br><br>Plaintiff,<br><br>vs.<br><br>BANK7,<br><br>Defendant. | Adversary Proceeding No. 23-03251 |

## BANK7'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

TO THE HONORABLE MARVIN ISGUR:

Defendant Bank7 files this Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Alpine Summit Energy Partners, Inc. (3755), HB2 Origination, LLC (6760), Ageron Energy II, LLC (1436), Ironroc Energy Partners, LLC (9801), Ageron Ironroc Energy, LLC (N/A), Alpine Summit Energy Investors, Inc. (4428), and Alpine Carbon, LLC (N/A). The location of the Debtors' service address is: 3322 West End Ave, Suite 450, Nashville, TN 37203.

**BANK7'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**   Page 1
38718685v.1

## I.     INTRODUCTION

1.      Despite having a second bite at the apple, the Creditors' Committee again fails to plead a negligent misrepresentation claim. As highlighted in Bank7's previous Motion to Dismiss, ECF No. 10, a negligent misrepresentation claim requires that there be an actual *representation* of an *existing fact*. Neither the original Complaint nor the Amended Complaint has identified the allegedly false representation of an existing fact made by Bank7 to Debtors. Instead, the Creditors' Committee doubled down on its allegation that Bank7's efforts to explore a potential increase in the funds available under the credit facility guaranteed an increased credit facility. This plainly fails on its face, and the Creditors' Committee's negligent misrepresentation claim at Count XI of the Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## II.     BACKGROUND

**A.     Bank7 Loan History with HB2.**

2.      On or about March 10, 2022, Bank7 entered into a credit agreement with Debtor HB2 Origination, LLC, ("HB2") for a revolving line of credit. The credit facility was initially secured by (a) mortgages and deeds of trust on multiple wells and associated leases, (b) guaranties from Debtor and non-Debtor entities, and (c) a Security Agreement from HB2 that encumbers substantially all of HB2's personal property. Bank7 properly recorded its security interests in the collateral.

3.      On April 29, 2022, HB2 repaid the credit facility and all accrued interest in full. As a result, Bank7 recorded partial releases of its liens on the wellbore interests. Throughout 2022, HB2 and Bank7 entered into various modifications to the credit facility, whereby Bank7 extended additional credit on the basis of additional collateral, on which Bank7 consistently and properly

recorded its security interests. Another full pay down of the credit facility occurred on or about September 12, 2022.

4. On September 30, 2022, the credit facility was amended again ("First Amended and Restated Credit Agreement") at which time Bank7 increased the line of credit to HB2 to $65 million in exchange for additional collateral. Bank7 again properly recorded its security interests.

**B.     HB2 Requests a Further Increase to the Credit Facility.**

5. In December 2022, Bank7 and HB2 began discussions regarding a potential additional increase of the credit facility. HB2 sought to increase the line of credit to $125 million. While Bank7 agreed to consider HB2's request, Bank7 never committed to increasing the line of credit. To the contrary, as shown in email correspondence from December 2022, Bank7 was careful not to promise that the line of credit would be increased, stating instead that "[r]egarding terms, we would like to wait until we have a firm agreement with ANB and finalize underwriting before we issue a formal terms sheet. That being said, below are the preliminary terms that we <u>expect</u> to move forward with." ECF No. 16-3, Am. Compl. Ex. D at 1 (emphasis in original).

6. As diligence continued, Bank7 continued to be cautious regarding HB2's request to increase the credit line. In January 2023, Bank7 made clear that "everyone was previously holding off on moving forward until we had the updated engineering and financials." ECF No. 16-4, Am. Compl. Ex. E at 4-5.

7. The First Amended and Restated Credit Agreement required Bank7 and HB2 to re-determine a new Borrowing Base on a quarterly basis ("Scheduled Determination"). Scheduled Determinations occurred on July 21, 2022 under the Credit Agreement and on October 21, 2022 under the First Amended and Restated Credit Agreement. The redetermination of the Borrowing Base on January 27, 2023 was also required under the First Amended and Restated Credit

Agreement as a Scheduled Determination and was not in connection with HB2's request that the credit facility be increased from $65 million to $85 million or higher. Bank7 only agreed to take HB2's request for an increase in the credit facility under consideration.

8. Bank7 continued to perform under the existing credit agreement, and engaged in good faith efforts to evaluate the potential increase of the credit facility. While performing its own due diligence on the requested increase in the credit facility, Bank7 worked with counsel to consider preparing documents to facilitate an increase in the event the engineering and financial due diligence came back satisfactory. Bank7 continued to communicate to HB2 that, although these preparations were underway, the ultimate decision was still dependent on the final underwriting.

9. Further, given the structure of the lending relationship between HB2 and Bank7, HB2 was aware that any potential increase to the credit facility did not guaranty available funds under the credit facility. The amount of funds available under the credit facility would be subject to ongoing evaluation of collateral pledged to Bank7. *See* ECF No. 16-A, Am. Compl. Ex. A at 27–29, 103–04 (Original Credit Agreement § 2.8; A&R Credit Agreement § 2.8).

10. Although the increase to the line of credit ultimately did not occur, Bank7 continued to advance funds under the existing credit facility and provide other valuable consideration. Between September 2022 and February 2023, Bank7 advanced more than $54 million to HB2. In 2023 alone, Bank7 advanced more than $12.5 million. In addition, despite a dramatic reduction in the value of the collateral, Bank7 did not require a multimillion dollar pay down of the loan. Further, Bank7, at all times leading up to the bankruptcy, allowed HB2 to use the cash flow from the collateral to support the working capital obligations of HB2.

11. Bank7 also provided HB2 access to funds by allowing HB2 to liquidate its hedge book. Natural gas prices in March 2023 dropped below $2.00. Since these hedges were required to be reconciled with daily margin calls, HB2 was at significant risk if these hedges were not released. Not only did HB2 receive the funds as they were unwinding the hedges, but HB2 was released from the liability of what would have occurred if natural gas prices increased (which they did). This release saved HB2 from incurring significant additional liabilities. HB2 was only able to liquidate its hedge book because Bank7 and HB2 entered into a waiver agreement that provided for (i) the waiver of all loan covenants, (ii) no additional advances under the line of credit, and (iii) the pledging of additional collateral. Under the terms of the Credit Agreement, HB2 was required to maintain minimum hedges; thus, liquidating the hedges to provide cash would have been an event of default, absent Bank7's consent. As a result of this agreement, on March 8, 2023 and March 10, 2023, HB2 received wires from HB2's hedging counterparty in the amounts of $1.6 million and $3.2 million.

12. Further, Bank7 provided HB2 an extension of credit for three months with interest only repayment terms.

13. In exchange for all of the various forms of additional value that Bank7 provided, HB2 delivered additional collateral to Bank7. Bank7 then properly secured and perfected its lien interests in the collateral.

### III.   ARGUMENT

**A.   Standard for dismissal under Federal Rule of Civil Procedure 12(b)(6).**

14. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient information to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007). A "plaintiff's obligation [is] to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555 (quotation omitted) (cleaned up). Reciting naked assertions devoid of "further factual enhancement" does not suffice. *Id.* at 546. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Id.* at 557.

15. Count XI is not supported by an actionable misrepresentation of an existing fact. This count should be dismissed. *See* Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 555–57.

16. For the negligent misrepresentation claim to survive dismissal, the Creditors' Committee must allege "(i) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (ii) the representation conveyed 'false information' for the guidance of others in their business; (iii) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (iv) the plaintiff suffered a pecuniary loss by justifiably relying on the representation." *In re Montco Offshore, Inc.*, 595 B.R. 524, 537 (Bankr. S.D. Tex. 2018) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653-654 (Tex. 2018)).

17. To support a claim for negligent misrepresentation, the false information provided must concern an "existing fact" rather than a promise of future conduct. *AKB Hendrick, LP v. Musgrave Enters., Inc.,* 380 S.W.3d 221, 237–38 (Tex. App.—Dallas 2012, no pet.); *see also Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, No. CIV.A.3:04-CV-1299-N, 2005 WL 292433, at *5 (N.D. Tex. Feb. 7, 2005). The Creditors' Committee cannot satisfy its burden because the allegations in the Complaint regarding Bank7's alleged intentions to increase the line of credit do not create colorable claims as a matter of law.[2]

---

[2] The Creditors' Committee states that "Bank7 Provided No Value for Post-September 2022 liens and security interests." *See* ECF No. 16, Am Compl. at 18. This is simply untrue. The actual facts are that between September 2022 and February 2023, Bank7 advanced more than $54 million to HB2. In 2023 alone, Bank7 advanced more than $12.5

18. The Creditors' Committee attempts to save its negligent misrepresentation claim by adding the following allegations:

> Bank7's deceptive material statements during the fall 2022 meeting between the parties, along with the December 22 Communication and January 10 Communication induced the Debtors to believe that the Revolving Credit Facility would be increased from $65 million to $125 million. The Debtors provided Bank7 additional collateral to support the anticipated increase of the Revolving Credit Facility in reliance on Bank7's negligent misrepresentations.

ECF No. 16, Am. Comp. ¶ 141. The Creditors' Committee's reliance on these so-called "misrepresentations" is still fatal to its claims.

19. The only factual allegations regarding the "fall 2022 meeting between the parties" provided in the Amended Complaint are: (1) "The Debtors believed their request for additional funding would be approved by Bank7, in part, because the $65 million in availability under the Revolving Credit Facility represented only 40% of the PDP asset base purportedly securing the Obligations," *id.* at ¶ 26; and (2) "Following the fall 2022 meeting, the Debtors' management believed that there was a mutual understanding with Bank7 that, given the additional collateral in the Debtors' development pipeline expected to come online in the near term, Bank7 would provide additional credit capacity," *id.* at ¶ 27. But neither of these two general statements provide any allegation of what "representation" was made at the fall 2022 meetings to supposedly mislead Debtors nor what the "false information" was. *In re Montco Offshore*, 595 B.R. at 537. General references to a meeting do not cure the infirmities of the Creditors' Committee's claim.

20. Additionally, the December 22 email once again relied on by the Creditors' Committee undercuts its contentions. In the email, Bank7 states: "[r]egarding terms, we would like to wait until we have a firm agreement with ANB and finalize underwriting before we issue a

---

million. What's more, in addition to its other value-generating actions, in March 2023, Bank7 agreed to amend the credit facility to allow HB2 to access $4.8 million in cash from its hedging positions.

**BANK7'S PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**   Page 7
38718685v.1

formal terms sheet. That being said, below are the preliminary terms that we <u>expect</u> to move forward with." *See* ECF No. 16-3, Am. Compl. Ex. D at 1 (emphasis in original). A similar tone prevailed in a January 10th email communication, cited by the Creditors' Committee. There, Bank7 stated, "everyone was previously holding off on moving forward until we had the updated engineering and financials." ECF No. 16-4, Am. Compl. Ex. E at 4. Such statements are far from representations of an "existing fact" of an agreement to increase the line of credit.

21. In reality, these statements represent nothing more than a statement of future intention that Bank7 might be willing to increase the line of credit under certain circumstances. As a matter of law, these are not actionable misrepresentations—merely conveying what a party is *expecting to occur* is not a false statement of an existing fact. *See Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, No. CIV.A.3:04-CV-1299-N, 2005 WL 292433, at *5 (N.D. Tex. Feb. 7, 2005) (dismissing claim for negligent misrepresentation under Texas law supported only by statement of future intention that defendant would provide plaintiff with a project status report and the software stack within a particular time period); *see also In re River Ctr. Holdings, LLC*, 394 B.R. 704, 714 (Bankr. S.D.N.Y. 2008) (denying motion for specific enforcement because the statements "read as a whole, [] were not wholly unequivocal, and were statements of expectation, not promise"); *In re Melancon*, 223 B.R. 300, 317 (Bankr. M.D. La. 1998) ("[T]he statement 'I expect/hope/suppose that I will pay' is not at all the same as 'I will pay.'").

22. In considering similar claims brought under Section 523 of the Bankruptcy Code, bankruptcy courts summarily deny any attempt to construe a party's communicated expectation as a representation. Instead,

> The representation must have included statements that, when made, "falsely purport[ed] to depict [then] current or past facts . . . . A promise to perform in the future is insufficient[.]" Thus,

> "representations as to opinion, **expectation** or declarations of intention do not relate to existing fact and are not actionable"[.]

*In re Williams*, No. 14-10838 (MEW), 2015 WL 4366321, at *4 (Bankr. S.D.N.Y. July 15, 2015), *aff'd*, 579 B.R. 314 (S.D.N.Y. 2016) (emphasis added) (citing *In re Spar*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994)). *See In re Jacob*, No. 97 A 01644, 1998 WL 150493, at *4 (Bankr. N.D. Ill. Mar. 23, 1998) ("A promise to act in the future is not a false representation, nor is an expression of opinion or expectation.").

23. The Creditors' Committee's negligent misrepresentation claim suffers from the same defect. Even using the Creditors' Committee's cherry-picked evidence in this second attempt—which indicates at most that, at certain points of time, Bank7 "expect[ed]" that it might be sufficiently satisfied so as to increase the credit facility—no actionable misrepresentation exists. Thus, Count XI should be dismissed.

## IV.  CONCLUSION

24. Bank7 requests that the Court grant the Motion, dismiss the claims asserted against Bank7 in Count XI from this adversary proceeding, and grant Bank7 this Motion and all other relief to which is it entitled.

Respectfully submitted,

**JACKSON WALKER LLP**

By: /s/ *Christopher R. Bankler*
    Michael S. Held
    State Bar No. 09388150
    Christopher R. Bankler
    State Bar No. 24066754
    Elizabeth W. Pittman
    State Bar No. 24110823
    2323 Ross Avenue, Suite 600
    Dallas, Texas 75201
    (214) 953-6000
    (214) 953-5822 - Fax
    Email: mheld@jw.com
    Email: cbankler@jw.com
    Email: epittman@jw.com

    Bruce J. Ruzinsky
    State Bar No. 17469425
    Jackson Walker LLP
    1401 McKinney St., Suite 1900
    Houston, TX 77010
    (713) 752-4204
    (713) 752-4221 – Fax
    Email: bruzinsky@jw.com

    **ATTORNEYS FOR DEFENDANT BANK7**

## CERTIFICATE OF SERVICE

    This is to certify that on this the 19th day of January, 2024, a true and correct copy of the foregoing document was served electronically via the Court's CM/ECF electronic notification system.

                                        /s/ *Christopher R. Bankler*
                                        Christopher R. Bankler